IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY CO., | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| NORTHWEST MISSOURI MASONRY et al., | ) ) |
| Defendants. | ) |

Case No. 06-6023-CV-SJ-NKL

**ORDER**

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Employers Mutual Casualty Company ("Employers Mutual") [Doc. # 71] and Defendant MW Builders, Inc. ("MW Builders") [Doc. # 73]. Because Employers Mutual breached its duty to defend MW Builders, its Motion for Summary Judgment is DENIED in part and GRANTED in part.[1] MW Builders' Motion for Summary Judgment is GRANTED.

**I.     Facts**

The following facts are undisputed. Employers Mutual issued Commercial

---

[1]Defendants Stephen and Charles Sears are in default. Therefore, the Court grants summary judgment in favor of Employers Mutual as to its claims against those Defendants. The Court is unpersuaded by the arguments raised by the Piverals as to this issue.

1

General Liability Policy 1D9-98-92-04 (the "Policy") to Northwest Missouri Masonry, Inc. ("Northwest Masonry"), effective from March 17, 2003 to March 17, 2004. Northwest Masonry obtained the Policy as part of its subcontractor agreement with MW Builders, Inc. ("MW Builders"), the general contractor for a project located on the campus of Northwest Missouri State University in Maryville, Missouri. The subcontractor agreement required that the insurance policy obtained by Northwest Masonry "state that all coverages are in effect and will not be cancelled without thirty (30) days prior written notice to MW." (Standard Form of Subcontract § 13.1). The Policy required ten (10) days' written notice to the Named Insured, Northwest Masonry, before cancellation for non-payment of premium. (Policy Endorsement IL 02 74 07 02). The Policy expressly excluded coverage for Workers Compensation claims.

On August 8, 2003, Employers Mutual sent Northwest Masonry notice of cancellation of the Policy due to non-payment of premium which became effective on August 23, 2003. (Pl. Ex. E). However, Employers Mutual did not provide a 30 day notice to MW Builders, which was an additional insured under the policy. On September 11, 2003, Randy Piveral, an employee of Northwest Masonry, suffered injuries after falling from a scaffold erected at the project site. On August 24, 2005, Piveral brought suit against Northwest Masonry, MW Builders, as well as Northwest Masonry employees, Stephen and Charles Sears. (Piveral's Petition for Damages). Piveral's petition included the following relevant allegations:

> The Defendant MW at all relevant times herein mentioned, was the general

> contractor for the project at Northwest Missouri State University at Maryville, Nodaway County, Missouri. (Petition for Damages ¶ 9).
>
> That on or about the 11h day of September, 2003, Plaintiff, Randy Piveral, while in the course and scope of his employment, went out on the scaffolding, delivered by Defendant Summit and erected at the direction of Defendant MW at the northwest corner of Building 2 on the campus of Northwest Missouri State University at Maryville, Nodaway County, Missouri. *Id*. ¶ 10.

Piveral's petition further alleged that MW Builders:

> was negligent when it failed to properly erect or supervise the erection of the scaffolding, knew or should have known that the scaffolding was unsafe, failed to ensure compliance with OSHA, failed to inspect the scaffolding . . . . *Id*. ¶ 14.

The petition alleged that Piveral was an employee of Northwest Masonry and did not allege that he was an employee of MW Builders. *See id.* ¶ 9. MW Builders moved to dismiss Piveral's claim on the basis that it was Piveral's statutory employer and thus the Missouri Labor and Industrial Relations Commission ("LIRC") had exclusive jurisdiction over Piveral's claim under Missouri's Workmen's Compensation Law. Missouri state trial and appellate courts rejected MW Builders' motion to dismiss, but the Missouri Supreme Court determined that Piveral was the statutory employee of MW Builders and, therefore, the LIRC had exclusive jurisdiction. *State ex rel. MW Builders, Inc. v. Midkiff*, 222 S.W.3d 267 (Mo. 2007).

On October 5, 2006, St. Paul's Travelers, who provided a defense to MW Builders, sent Employers Mutual a written tender for defense and indemnity of MW Builders under the Policy. St. Paul's sent a second tender on January 13, 2006. On January 25, 2006, Employers Mutual issued a letter indicating that Employers Mutual disclaimed coverage

3

but agreed to "retain Mr. Terry Evans to defend MW in Mr. Piveral's suit" subject to a reservation of rights. (Def. Ex. E). The letter set forth Terry Evans's contact information, but Terry Evans never contacted MW Builders to provide representation. MW Builders now argues that Employers Mutual owed a duty to defend it against Piveral's suit and seeks $32,984.81 in defense costs. Prior to November 18, 2005, MW Builders incurred $1,577 in attorneys' fees when it was defended by Sanders, Conkright & Warren, P.C. Between November 18, 2005 and July 9, 2007, MW Builders incurred $31,407.18 in defense costs from Baty, Holm & Numrich, P.C. (MW Br. ¶ 30).[2] MW Builders seeks judgment against Employers Mutual in these amounts. Employers Mutual seeks a declaration that it owed no duty under its insurance with Northwest Masonry to provide a defense to MW Builders.

## II. Discussion

### A. Unilateral Contract

MW Builders bases its claim on two theories. First Employers Mutual's January 25, 2006 letter constituted an express, unilateral contract between the parties which MW Builders accepted "by performing the act of cooperating with [Employers Mutual]." (MW Br., 10). In Missouri, a unilateral contract is formed where there is an offer and an offeree's acceptance by performing the acts specified in the offer. *Ryan Equipment Co v. Ficken*, 423 S.W.2d 63, 71 (Mo. Ct. App. 1967); *Doss v. EPIC Healthcare Management*

---

[2]The parties do not dispute the amount of defense costs due. Rather, the dispute is about whether Employers Mutual owed any duty to defend MW Builders.

4

*Co.*, 901 S.W.2d 216 (Mo. Ct. App. 1995). MW Builders attempts to cast Employers Mutual's January 25, 2006 letter as a unilateral contract by quoting *Pink v. Knoche*, 103 S.W.3d 221, 228 (Mo. Ct. App. 2003) ("A reservation of rights letter is a unilateral declaration from an insurance company to its insured that the company accepts the defense of the tendered claim but reserves the right to later deny coverage on certain specified grounds."). *Knoche* does not stand for the proposition that a reservation of rights letter is an offer, but rather that a reservation of rights letter is not, *per se*, a denial of coverage as a matter of law. *Id*. Furthermore, Employers Mutual's unilateral contract argument fails because there is no language in Employers Mutual's letter which identifies any act that MW Builders must perform in order to accept Employers Mutual's offer. There was no unilateral contract to provide a defense.

Before analyzing MW Builders' second theory which is a breach of contract claim based on Employers Mutual's insurance policy with Northwest Masonry, the Court will address Employers Mutual's contention that it effectively cancelled the Northwest Masonry Policy before Piveral was injured.

### B. Cancellation

There is no dispute that Northwest Masonry failed to pay the premiums required by the Policy, and that Employers Mutual mailed Northwest Masonry a notice stating the actual reason for cancellation. Thus, under the Policy, Employers Mutual's cancellation became effective as to Northwest Masonry on August 23, 2003. The question before the Court is whether the cancellation also terminated MW Builders' rights as an additional

5

insured under the Northwest Masonry Policy.

MW Builders argues that the Certificate of Liability Insurance which was issued by Employers Mutual to Northwest Masonry and held by MW Builders, had a clause stating that "the insurance policies listed above comply with the insurance requirements identified in the insurance section of the subcontractor agreement for the above listed project." (MW. Ex. C).[3] That subcontractor agreement provided that the Northwest Masonry insurance policy would not be cancelled without 30-day prior notice for MW Builders. The Certificate of Liability Insurance also states that "should any of the above described policies be cancelled before the expiration date thereof, the issuing insurer will endeavor to mail 30 days' written notice to the certification holder [MW Builders, Inc.]." *Id*. However, the Certificate of Liability Insurance also states that "this certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below."

An insurance company may create an estoppel where a custom, course of dealing or express assurance extends a right of notice to an insured. *Bank of Poplar Bluff v. Metropolitan Life Ins. Co.*, 723 S.W.2d 514, 518-19 (Mo. App. 1986) (citing *Missouri*

---

[3] The Certificate of Liability Insurance was issued by Green Hills Insurance Services, LLC, which MW Builders states is "an authorized insurance agent of [Employers Mutual]." Employers Mutual objects to this categorization as including a "conclusion of law" as to Green Hills Insurance Services, LLC, "as well as to the scope of any authority of such agency." (Pl. Reply Br ¶ 5). Employers Mutual, however, raises no factual or evidentiary basis to dispute this conclusion based on the Agency Agreement between Green Hills and Employers Mutual. That agreement establishes an agency relationship as a matter law. Therefore, Employers Mutual is bound by the certificate of insurance.

*Cattle Loan Co. v. Great Southern Life Ins. Co.*, 52 S.W.2d 1, 10 (Mo. banc 1932). Because the Certificate of Liability Insurance warranted that the Policy complied with MW Builders' subcontract with Northwest Masonry and said it would "endeavor" to give MW Builders 30 days' written notice, Employers Mutual has created an estoppel which prevents it from arguing that its notice of cancellation to Northwest Masonry alone was effective as to MW Builders. *See also Ins Co. of North America v. Aberdeen Ins. Servs., Inc.*, 253 F.3d 878, 886 (5th Cir. 2001) (ruling that language in a subcontract requiring 30 days' notice to the general contractor provided an independent notice requirement binding the subcontractor's insurer). There is no evidence that Employers Mutual "endeavored" to provide written notice to MW Builders.[4]

Having decided that Employers Mutual's Notice of Cancellation was ineffective as to MW Builders, the Court must decide whether Employers Mutual had a duty to defend under the Policy and whether it breached that duty.

**C.     Breach of Contract**

In Missouri, in order to state a claim for breach of contract, the following elements must be proved by the preponderance of the evidence: (1) the existence of a contract between the parties; (2) mutual obligations arising under its terms; (3) the party being sued

---

[4] Alternatively, *Lutsky v. Blue Cross Hospital Service, Inc.*, 695 S.W.2d 870, 875 n.7 (Mo. 1985), provides that when a contract promises something at one point and takes it away at another, there is an ambiguity. The ambiguity should be strictly construed against the insurer. *Sargent Constr. Co. v. State Auto Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994).

7

failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged. *Jackson v. Williams, Robinson, White & Rigler, P.C.,* 230 S.W.3d 345 (Mo. Ct. App. 2007); *see also C.L. Maddox, Inc. v. Benham Group*, 88 F.3d 592, 598 (8th Cir. 1996). An insurer's duty to defend is broader than its duty to indemnify. *Valentine-Radford, Inc. v. American Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo. Ct. App. 1999). That duty is broader because it arises when the insured is first sued. *Esicorp., Inc. v. Liberty Mutual Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999). The duty to defend is determined by comparing the language of the policy with the allegations of the petition in the action against the insured. *Valentine-Radford, Inc. v. American Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo. Ct. App. 1999). An insurer has a duty to defend if the third party states a claim which is potentially or arguably within the policy's coverage. *Id*.

In this case, the petition did not allege that Piveral was an employee of MW Builders. (Petition for Damages ¶ 9) (describing MW Builders as the general contractor). The petition's only allegation as to MW Builders was for negligence related to the scaffolding. The Court concludes that Piveral's complaint stated a cause of action "potentially or arguably" within the policy's coverage. Indeed, the course of MW Builders' motion to dismiss Piveral's claim provides some evidence that the claim "potentially or arguably" fell within coverage terms. At least two Missouri courts found that Piveral could proceed in tort against MW Builders rather than being limited to a Workers Compensation claim.

MW Builders has, therefore, established as a matter of law that Employers Mutual

owed MW Builders a duty to defend beginning October 5, 2005, when MW Builders sent Employers Mutual its first written tender of defense.

"The duty to defend is a contractual obligation. A breach makes the insurer liable for damages reasonably flowing from the breach. Those damages typically include the insured's cost of defending the underlying action." *See Wood v. Safeco Ins. Co.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998). Employers Mutual does not dispute that MW Builders properly tendered its request for defense under the terms of the Policy. Providing notice under the terms of the agreement effectively triggered Employers Mutual's duty to defend. *DeAngelo Bros., Inc v. Horne*, 2007 U.S. Dist. LEXIS 11892 (W.D. Mo. Feb. 21, 2007). While Employers Mutual sent a letter to MW Builders indicating that a defense would be provided, no defense was provided even though MW Builders notified Employers Mutual that Terry Evans had never contacted MW Builders. It is clear, therefore, that Employers Mutual breached its duty to provide a defense.

Employers Mutual, however, argues that any damages awarded to MW Builders should be barred under Section IV.2.d of the Policy:

> No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

But by refusing to defend, Employers Mutual gave up its contractual right to control the defense of the underlying action. *Esicorp, Inc v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 970 (8th Cir. 1999). Employers Mutual also argues that MW Builders received a defense from another insurer, St. Paul's Travelers. However, under Missouri's collateral source rule,

9

Employers Mutual may not have the damages to which it is liable reduced by proving that MW Builders has received or will receive compensation or indemnity for the loss from a collateral source. *Protection Sprinkler Co. v. Lou Charno Studio*, 888 S.W.2d 422, 424 (Mo. Ct. App. 1994).

Accordingly, the Court declares that:

1. Employers Mutual's Motion for Summary Judgment [Doc. # 71] is DENIED as it relates to MW Builders, but is GRANTED as it relates to Charles and Stephen Sears; and,

2. MW Builders' Motion for Summary Judgment [Doc. # 73] is GRANTED. EMC is liable to MW Builders for $32,984.81 in attorneys' fees, expenses and costs, plus interest of 9% per annum.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 20, 2008
Jefferson City, Missouri